UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------x

 PAUL WHITE,

               Plaintiff,


          -against-                        **MEMORANDUM AND ORDER**

                                           17-cv-4286 (EK)(RER)

 ALBERT ABNEY, et al.,

               Defendant.


-------------------------------------------x

ERIC KOMITEE, United States District Judge:

        Plaintiff Paul White, proceeding *pro se*, commenced

this action in 2017 against several witnesses who had testified

against him at his 2014 criminal trial on real-estate fraud

charges.  In his amended complaint, filed on December 23, 2019,

Plaintiff brings claims for fraudulent misrepresentation,

fraudulent inducement, tortious interference with business

relations, tortious interference with contracts, and unjust

enrichment against Sandra Schmidt, who testified against White

in the criminal case.  Schmidt moves to dismiss for failure to

state a claim upon which relief can be granted.  For the reasons

set forth below, that motion is granted.

### I. Background

        Plaintiff is currently incarcerated at Five Points

Correctional Facility, having been convicted of seven counts of

1

grand larceny and one fraud count at his jury trial in the New York State Supreme Court, Suffolk County.  *See* Amended Complaint ¶ 54, ECF No. 44 (Compl.); *see also Spota v. White* (*"Spota II"*), 48 N.Y.S.3d 268, 2016 WL 6427362, at *2 (N.Y. Sup. Ct. 2016).[1] Following trial, Plaintiff was sentenced to twenty-one to sixty-three years in prison and ordered to pay $2.975 million in restitution.  *See Spota II*, 2016 WL 6427362, at *2.

The conviction arose out of a scheme to defraud investors in a real-estate development.  *See id.* at *4.  White held himself out as a financial advisor and solicited clients — including Schmidt — to invest by falsely representing "that he was going to invest their money in an income-producing, low-risk investment."  *Id.*  He used this money to purchase the "John Cline Reservoir," a 400-acre parcel in North Carolina, using a limited liability company that paid real estate "brokerage commissions" to entities he controlled.  *Id.*  After he refused a client's demand that he return their investment, his investors pursued criminal charges against him,[2] *see Spota v. White* (*"Spota*

---

[1] This court order granted summary judgment in favor of the District Attorney of Suffolk County, acting as the "claiming authority," to enforce the civil forfeiture judgment against Plaintiff following his criminal conviction.  A copy of this court order is attached to the Amended Complaint as Exhibit J.

[2] In his Amended Complaint, White alleges that Schmidt made at least one criminal complaint to the District Attorney's Office and "engaged" District Attorney Spota to "represent her" in recovering $297,000 that she used to purchase the property.  Compl. ¶ 47.

*I"*), 997 N.Y.S.2d 101, 2014 WL 2931068, at *2 (N.Y. Sup. Ct. 2014),[3] and the case was investigated and prosecuted by the Suffolk County District Attorney's Office.  *See* Compl. ¶ 6; *People v. White*, Case No. I-2710-2012.  Following White's conviction for grand larceny and fraud, Schmidt was awarded restitution in the amount of $297,000 (the amount of her original investment).  *See* Compl. Ex. N (Restitution Judgment Order CPL § 420.10).

In 2016, the District Attorney brought a civil forfeiture action against White and others to recover a total of $2.4 million in proceeds from the scheme.  *Spota II*, 2016 WL 6427362, at *1.  In support of his motion for summary judgment, the District Attorney cited trial evidence that White took approximately $2.975 million from his victims and paid approximately $500,000 back to them for an "option" to repurchase their interests in the property.  *Id.* at *4.  White's opposition to this motion mainly challenged the trial court's $2.975 million restitution order, on the ground that the trial court failed to consider the value of benefits received by his victims and payments he had made to them.  *Id.*  The court rejected this challenge as an improper collateral attack on his

_____

[3] A copy of this 2014 court order, which was issued before White's criminal trial, is attached to the Amended Complaint as Exhibit H.

criminal conviction and held that the District Attorney had *prima facie* established its entitlement to judgment in the amount of $2.4 million.  *Id.*

In 2017, White notified Schmidt that the North Carolina Superior Court had validated her property deed and she therefore retained a valid ownership interest in the property. Compl. ¶ 56; Ex. O.  White contends that the court's finding proves he is "actually innocent," because the basis for his grand larceny conviction was the invalidity of the deeds he sold to investors.  *Id.* ¶¶ 54, 56.  He requested that Schmidt sign and file a Satisfaction of Judgment with the Clerk of Court in Suffolk County, and notify the District Attorney of his actual innocence.[4]  *Id.* ¶ 57.  Schmidt did not take these actions.  *Id.* ¶ 58.

Plaintiff subsequently brought this case against Schmidt and others who assisted the District Attorney's Office in the criminal investigation and/or testified before the grand jury, trial court, and civil forfeiture hearings.  He contends that the defendants misrepresented material facts to obtain his "unjust criminal conviction . . . and incarceration," including by giving false testimony.  Compl. ¶¶ 194, 197.  Plaintiff's

---

[4] In a letter dated April 5, 2017 addressed to Schmidt, White informed her that the "judgment is irreparably damaging my personal credit and you could be personally responsible for the damages, if you fail to execute and file the Satisfaction of Judgment enclosed herewith."  Compl. Ex. O.

original complaint alleged claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), civil conspiracy, false arrest, false imprisonment, malicious prosecution, tortious interference with business relationships, and fraud, invoking the court's diversity jurisdiction for his state-law claims.

In a Memorandum & Order dated March 21, 2019, Judge Margo K. Brodie found that diversity jurisdiction was lacking because of incomplete diversity of citizenship.  Memorandum & Order at 4, ECF No. 28.  She construed the complaint as asserting federal claims under RICO, Section 1983 for false arrest, false imprisonment, and malicious prosecution, and civil conspiracy under Sections 1983 and 1985.  *Id.* at 6-7.  Judge Brodie held that these federal claims were "patently without merit."  *Id.* at 13.  There was thus no basis for the court to exercise supplemental jurisdiction over Plaintiff's state-law claims for tortious interference and fraud, which she dismissed without prejudice.[5]  *See id.*  In his Amended Complaint, Plaintiff dropped the claims against two defendants that were domiciled in New York and brought this diversity action against the remaining defendants, including Schmidt.

Plaintiff alleges defendant Schmidt knowingly made false statements to the Suffolk County District Attorney's

---

[5] This case was subsequently reassigned to the undersigned judge in February 2020.

Office in September 2012; *see* Compl. ¶¶ 147, 151, 153, 157, 161, 165, 169, 173, 177, 181, 185; before the grand jury in October 2012; *see id.* ¶¶ 148, 152, 154, 158, 162, 166, 174, 178, 182, 186; to the jury in his criminal trial in October 2014; *see id.* ¶¶ 149, 155, 159, 163, 167, 171, 175, 179, 183, 187; and to the District Attorney's Office in connection with the civil forfeiture action in October 2016. *See id.* ¶¶ 150, 156, 160, 164, 168, 172, 176, 180, 184, 188.

The allegedly false statements include the following: that Defendant falsely claimed that she did not sign a Purchase Agreement for an ownership interest in the property in North Carolina known as the John Cline Reservoir; that she did not sign, in connection with her purchase of the ownership interest, a Power of Attorney, a Dual Representation Agreement, a Tenant-in-Common Agreement, and numerous documents with "First National Qualified intermediary"; that she did not authorize an attorney to represent her in purchasing the property; that she did not authorize the attorney to create John Cline Reservoir I LLC on her behalf to purchase the property; and that she did not include the property on her federal and state tax returns, when she had reported it as real estate in which she owned an interest. *See id.* ¶¶ 147-188.

Plaintiff alleges that Defendant made these false statements for the purpose of misleading the District Attorney's

Office into bringing criminal and civil actions, and the jury and judges into reaching adverse decisions, *id.* ¶¶ 196-98; and that she knew and intended that they would prevent Plaintiff from continuing to develop the property and interfere with his contracts with third parties, including other investors, *id.* ¶¶ 244-45; 278-79.

Plaintiff also alleges that, had he known Defendant would later make these false statements, he would not have transacted business with her in the first place. *See id.* ¶ 207 ("Had Plaintiff . . . known that Schmidt was knowingly, willfully and intentionally planning to fraudulently misrepresent the material facts, as described in Paragraphs 147 through 188, . . . Plaintiff . . . would <u>not</u> have entered into the SCHMIDT PA [Purchase Agreement] . . . .").[6]

Finally, Plaintiff alleges that, as a result of her false statements, Defendant was unjustly enriched in the amount of $27,720 he paid her for the right to repurchase her interest in the property; $1.1 million that he invested in developing the property; and an additional $30,000 of Plaintiff's assets that were "unjustly seized" based upon her false statements. *See id.*

---

[6] Although Plaintiff alleges that Defendant made false statements to induce him to sell her an ownership interest in the property, *id.* ¶¶ 227-28, the alleged false statements all occurred between 2012 and 2016, *id.* ¶¶ 147-88, whereas the sale from Plaintiff to Defendant occurred in 2008, *id.* ¶¶ 26-34.

¶ 290.  Plaintiff argues that it is against good conscience to permit Defendant to retain these amounts, particularly in light of his assertion that Defendant received a valid property deed and retains an interest in the property.  *Id.* ¶ 293.  Defendant moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) as to all of Plaintiff's causes of action.

## II. Legal Standards

In reviewing a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *E.g., Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).  However, only "a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.  Nonetheless, in reviewing a *pro se* complaint, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted

by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation and internal quotation marks omitted); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (same); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that the court "remain[s] obligated to construe a *pro se* complaint liberally").

### III. Discussion

A. <u>Statements Made in Connection with Judicial Proceedings</u>

Plaintiff's claims are based on statements Schmidt allegedly made to the Suffolk County District Attorney's Office in the course of its investigation, as well as her testimony in criminal and civil proceedings. These statements cannot be the basis for the instant tort claims.

The Supreme Court has made clear that witness testimony at trial is protected by absolute immunity, given the harm to the judicial process that would ensue if any aggrieved defendant could sue a testifying witness. *See Briscoe v. LaHue*, 460 U.S. 325, 335 (1983) (discussing the common-law rule of absolute immunity arising out of a witness' testimony at trial); *Butz v. Economou*, 438 U.S. 478, 512 (1978) (discussing the necessity of absolute immunity to assure that witnesses can perform their function without harassment or intimidation). The risk of a retaliatory lawsuit would, for obvious reasons, disrupt the judicial process by diminishing prospective witnesses' willingness to come forward and give honest

testimony.  *See Briscoe*, 460 U.S. at 332-33; *see also White v. Frank*, 680 F. Supp. 629, 634 (S.D.N.Y. 1988) (describing the "almost inevitable retaliatory suits that would follow every adverse determination at trial, without the deterrent of absolute witness immunity").

The doctrine of absolute immunity for trial witnesses has developed since *Briscoe* to protect witness statements made in other contexts as well.  In *Rehberg v. Paulk*, 566 U.S. 356 (2012), the Supreme Court held that grand jury witnesses enjoy the same immunity as trial witnesses, and that this immunity extends to claims against a witness "concerning the initiation or maintenance of a prosecution."  *Id.* at 369.[7]  As the Court observed, "[i]n the vast majority of cases involving a claim against a grand jury witness, the witness and the prosecutor conducting the investigation engage in preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony."  *Id.* at 369-70.  Accordingly, an allegedly false statement cannot be the subject of a collateral lawsuit simply because it was made in

---

[7] The claims in *Rehberg* arose under Section 1983, which is commonly used by plaintiffs challenging conduct in a criminal prosecution.  Here, Plaintiff brought claims for false arrest, false imprisonment and malicious prosecution, which Judge Brodie construed as arising under Section 1983 and dismissed.  *See* Memorandum & Order dated March 21, 2019.  However, *Briscoe* held in no uncertain terms that "the common law provide[s] absolute immunity from subsequent damages liability for all persons — governmental or otherwise — who were integral parts of the judicial process."  460 U.S. at 335.  It did not carve out any exception based on the types of claims at issue.

10

preparation for judicial proceedings, as well as at trial: "Were it otherwise, 'a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves.'" *Id.* at 369 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 283 (1993) (Kennedy, J., concurring in part and dissenting in part)).

There is an exception to this rule, but it does not apply here.  Courts have allowed suits against law enforcement officers "who 'set the wheels of government in motion by instigating a legal action.'" *Sankar v. City of New York*, No. 07-CV-4726 (RJD) (SMG), 2012 WL 2923236, at *3 (E.D.N.Y. July 18, 2012) (quoting *Rehberg*, 566 U.S. at 371)).  This exception may apply, for example, to an officer who is alleged to have falsified an affidavit or fabricated evidence.[8]  *See id.* at *3; *see also Rehberg*, 566 U.S. at 370 n.1.  And the exception

---

[8] Even in the example of a law enforcement officer who falsely builds up the case, the rationale for allowing claims for conduct outside of the judicial proceedings is not a limitation on the immunity for witness testimony, but rather a recognition that some conduct "exists independently" from witness testimony when the witness is also actively involved in an investigation.  In *Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015), the Second Circuit considered as a matter of first impression whether a law enforcement officer is entitled to absolute immunity as a grand jury witness pursuant to *Rehberg* when a plaintiff alleges that the officer withheld and falsified evidence in addition to committing perjury before the grand jury.  *Id.* at 112.  The court found that the complaint plausibly alleged misconduct by the defendant officer without reference to his perjurious grand jury testimony and could be subject to suit for that misconduct.  *Id.* at 113. Still, the Court noted that if discovery were to establish that any of the alleged conduct constituted "preparatory activity" conducted in advance of his grand jury testimony, then he would be entitled to absolute immunity for that limited conduct under *Rehberg*.  *Id.* at 113 n.7.

extends to a lay witness who "played an 'active role in the prosecution, such as [by] giving advice and encouragement or importuning the authorities to act.'" *Watson v. Sims*, 648 F. App'x 49, 52 (2d Cir. 2016) (quoting *Rothstein v. Carriere*, 373 F.3d 293-94 (2d Cir. 2004)). However, simply "reporting a crime to law enforcement and giving testimony does not constitute the 'initiation' of a criminal prosecution. More is required." *Id.* at 51.

Here, Defendant is not alleged to have "instigated" the legal action against Plaintiff or taken an active role in the investigation, prosecution, or civil forfeiture. Indeed, the allegations do not suggest that she had any involvement in the criminal or civil cases beyond her role as a witness. Accordingly, statements that she made in connection with the proceedings against Plaintiff — including those she made to the District Attorney's Office in preparation for those proceedings — are protected by the immunity afforded witnesses under *Briscoe* and *Rehberg*.

There are other safeguards in the judicial process to manage the risk that a defendant is unjustly convicted based on false testimony, including the opportunity for the aggrieved party to pursue a direct appeal. As Plaintiff noted during oral argument, he is currently appealing his conviction. *See* Transcript of Oral Argument dated August 12, 2020 at 23:17-

23:22, ECF No. 53.  And if a witness commits perjury, they may be criminally prosecuted.  The law is clear, however, that the safeguards against allegedly dishonest testimony do not extend to a collateral lawsuit by Plaintiff against Defendant in this forum.

>    B.   Claims for Fraud and Tortious Interference

Even if Defendant's statements were not protected by absolute immunity, the Amended Complaint would nonetheless fail to state a claim.  This section addresses Plaintiff's claims for fraud and tortious interference in turn.

>    1. Fraudulent Misrepresentation and Fraudulent
>       Inducement

Plaintiff alleges that Defendant fraudulently induced him into selling her an ownership interest in the Property and executing the relevant investment contracts, but the alleged false statements he identifies all occurred between 2012 and 2016 in connection with the criminal and civil cases.  Compl. ¶¶ 147-88.

To state a claim for fraud under New York law, a plaintiff must allege facts showing "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and

(4) injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).  The claims for fraudulent misrepresentation and fraudulent inducement share the same underlying elements.  *See, e.g.*, *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 148 (S.D.N.Y. 2018) ("In order to make out a claim of fraudulent inducement or fraudulent misrepresentation under New York law, a plaintiff must allege that: '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'") (cleaned up).  In a federal diversity action, a fraud claim must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b).  *See id.*  This requires a plaintiff alleging fraud to "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir. 2004) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)).

      Here, Plaintiff alleges that Defendant made false statements to the District Attorney's Office, the jury in his

criminal trial, and the judges in both the criminal and civil
proceedings.  *See* Compl. ¶¶ 147-88.  He claims that Defendant
made these false statements to mislead the District Attorney's
Office into bringing criminal and civil actions and the jury and
judges into reaching adverse decisions.  *See id.* ¶¶ 196-98.

Plaintiff fails to state a fraud claim because he does
not allege that these statements were made to him, or that he
reasonably relied on them to his detriment.  A common-law fraud
claim is limited to statements on which the *plaintiff* reasonably
relied.  *See, e.g.*, *Eternity Glob. Master Fund*, 375 F.3d at 186-
87 (plaintiff must show that "the defendant intended to defraud
the plaintiff" and that the "plaintiff reasonably relied" on the
misstatement or omission).

### 2. Tortious Interference with Business Relations and Contracts

Plaintiff also alleges that Defendant's false
statements interfered with his business relations and contracts
with third parties.  To state a claim for tortious interference
with *business relations* under New York law, a plaintiff must
allege that "(1) the plaintiff had business relations with a
third party; (2) the defendant interfered with those business
relations; (3) the defendant acted for a wrongful purpose or
used dishonest, unfair, or improper means; and (4) the
defendant's acts injured the relationship."  *RFP LLC v. SCVNGR,*

*Inc.*, 788 F. Supp. 2d 191, 195 (S.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).  "Conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 268 (E.D.N.Y. 2016) (quoting *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 192 (2004)). A plaintiff must do more than allege that the defendant's acts caused some form of interference with a business relationship. Instead, a claim for tortious interference with business relations requires a plaintiff to show that "the defendant's conduct . . . amount[ed] to a crime or an independent tort," *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quoting *Carvel Corp.,* 3 N.Y.3d at 190), or alternatively, that the defendant acted for "the sole purpose of inflicting intentional harm on plaintiffs," with no permissible purpose, *id.* (cleaned up).

        To state a claim for tortious interference with *contract* under New York law, a plaintiff must allege "(1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach

of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) (internal quotation marks omitted).  The complaint must identify a valid and enforceable contract between the plaintiff and a third party that was breached, and it must allege that the contract would not have been breached but for the defendant's intentional conduct.  *See AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02 CIV. 1363, 2003 WL 21203503, at *4 (S.D.N.Y. May 22, 2003).

Plaintiff alleges that Defendant had knowledge of his relations and contracts with third parties, citing the facts that (1) she knew Plaintiff was in contract to purchase ownership interests in the property from the Stameys (the sellers of the John Cline Reservoir), Compl. Ex. R; (2) her Purchase Agreement disclosed that Plaintiff had other investors, *id*. Ex. E; and (3) she signed a Dual Representation Agreement authorizing the same attorney to represent her and other counterparties in contracts with Plaintiff, *id.* Ex. D. Plaintiff also alleges that Defendant knew that he was developing the property at issue, as she had "personally visited the property and observed the development." *Id.* ¶ 258.  In light of these allegations, Plaintiff contends that Defendant made false statements to prevent Plaintiff from completing his purchase of the property, continuing the development of the property, continuing to pay other investors the option payments,

17

and reselling the developed property once completed.  *Id.* ¶ 260.
Defendant allegedly interfered with these activities by causing
Plaintiff to be arrested, indicted and eventually convicted, and
by causing the seizure of his assets.  *Id.* ¶ 264.

Plaintiff's criminal conviction, and the civil
forfeiture of his assets, surely had the effect of interfering
with his business relations and contracts.  And it is undisputed
that Defendant played a role in the conviction and forfeiture,
given her testimony.  However, Plaintiff does not allege that
Defendant directed any specific statements or conduct toward the
third parties with whom Plaintiff transacted business.  Nor does
he allege facts to support a reasonable inference that Defendant
committed *any* act with the intent required to support either
tortious interference claim.  Although he claims that Defendant
acted for the "sole purpose of harming plaintiff" and "utilized
wrongful means" to interfere with his business relations, these
are conclusory allegations for which no factual support is
provided.  *See RFP LLC*, 788 F. Supp. 2d at 195 ("If there are
'no allegations in the complaint capable of supporting a
reasonable inference that any . . . defendant acted with the
*sole purpose* of harming the plaintiff or used dishonest, unfair,
or improper means,' then the claim should be dismissed.")
(quoting *Premium Mortg. Corp.*, 583 F.3d at 107); *Merkin*, 791
F.3d at 262 (describing the intent element of a tortious

18

interference with business relations claim as a "high bar" to meet). And although he alleges that Defendant intentionally procured, without justification, a breach of the contract between Plaintiff and the Stameys, as well as breaches of other contracts between Plaintiff and other purchasers, Compl. ¶ 284, he again offers no factual support regarding her intent to cause a third party to breach any particular contract. *Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 343 (E.D.N.Y. 2020) ("New York law emphasizes the requirement that a tortious interference with contract claimant establish that the defendant purposefully intended to cause a contract party to breach a particular contract."). Accordingly, the Amended Complaint fails to state a claim for either tortious interference with business relations or tortious interference with contracts.

      C.   Claim for Unjust Enrichment

      Finally, Plaintiff claims that Defendant was unjustly enriched as a result of her alleged false statements. In an action for unjust enrichment under New York law, "[t]he essential inquiry . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging Holdings, LLC*, 114 A.D.3d 888, 889 (N.Y. App. Div. 2014) (quoting *Paramount Film Distrib. Corp. v. State of New York,* 30

N.Y.2d 415, 421 (1972)).  A plaintiff must show that "(1) the other party was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Id.* (citing *Mandarin Trading Ltd. v. Wildenstein,* 16 N.Y.3d 173, 182 (2011)).  "Unjust enrichment . . . does not require the performance of any wrongful act by the one enriched."  *Id.* (quoting *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978)).

Plaintiff alleges that he paid Defendant $27,720 in option payments for his right to repurchase her Tenant-in-Common ownership interest in the property, pursuant to the Purchase Agreement, and that she was unjustly enriched in that amount because her alleged false statements prevented him from being able to exercising his right to repurchase.  Compl. ¶ 290. Plaintiff further alleges that she was unjustly enriched by $1.1 million that he invested in developing the property, in which she now retains ownership interest.  *Id.*  Finally, Plaintiff alleges that she was unjustly enriched by an additional $30,000 of Plaintiff's assets that were "unjustly seized" based upon Schmidt's alleged false statements.  *Id.*

Plaintiff's claim of unjust enrichment is fundamentally a challenge to the restitution award entered, and the civil forfeiture authorized, by the state courts in connection with his criminal conviction.  Indeed, Plaintiff made

a similar argument to the state court overseeing the civil forfeiture proceedings, claiming that the restitution award issued by the trial court failed to consider the value of the benefits received by his victims when calculating the amount he owed to them. *See Spota II*, 2016 WL 6427362, at *4 (rejecting this argument as a collateral attack on his criminal conviction).  This Court will not entertain a claim that effectively seeks appellate review of a state court decision. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) ("Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments.") (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84, (2005)).  As discussed above, Plaintiff may pursue that challenge on direct appeal of his criminal conviction in state court.

### III. Conclusion

For the reasons set forth above, Defendant Sandra Schmidt's motion to dismiss is GRANTED with prejudice as to all causes of action against her in Plaintiff's Amended Complaint.


SO ORDERED.


                              /s/ Eric Komitee
                              ERIC KOMITEE
                              United States District Judge


Dated:    September 30, 2020
          Brooklyn, New York