```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x

  PAUL WHITE,

                      Plaintiff,

            -against-                        MEMORANDUM & ORDER
                                             17-CV-4286 (EK)(RER)

  ALBERT ABNEY, et al.,

                      Defendants.

----------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff Paul White, proceeding *pro se*, commenced this action in 2017 against several witnesses who testified against him at his 2014 criminal trial on real-estate fraud charges. In his amended complaint, filed *in forma pauperis* on December 23, 2019, Plaintiff brings multiple claims against defendants Ella Abney and Albert Abney ("the Abneys"), both of whom testified against White in the criminal case.[1] The Abneys

---

[1] Plaintiff's amended complaint indicates that defendant Albert Abney recently died. No suggestion of death has been filed, however, nor has Plaintiff filed a motion for substitution pursuant to Rule 25 of the Federal Rules of Civil Procedure. "If no one moves for substitution, it is proper for the court to proceed to judgment with the original named parties." *Gervis v. Berg*, No. 9-CV-3362, 2007 WL 9747653, at *8 (E.D.N.Y. Nov. 7, 2007) (Report and Recommendation) (quoting 6 James Wm. Moore et al., Moore's Federal Practice ¶ 25.12 (3d ed. 2007)). In these circumstances, the "court does not have to refrain from action if no motion is made." Moore, *supra*, ¶ 25.12; *see also Coffee v. Cutter Biological*, 809 F.2d 191, 193 n.1 (2d Cir. 1987) ("[T]he district court was informed by appellees' counsel that Mr. Coffee had died. Because his death had not yet been reflected on the record, the district court elected to continue treating Mr. Coffee as a party.").

were served on January 21, 2020, but have not appeared in this case. *See* ECF No. 47. The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 for the purpose of this Memorandum and Order. Nevertheless, as set forth below, the Court dismisses all claims against the Abneys pursuant to 28 U.S.C § 1915 because of the Defendants' absolute immunity.

## I. Background

Following a jury trial in New York State Supreme Court, Suffolk County, Plaintiff was convicted of seven counts of grand larceny and one count of fraud. *See* Amended Complaint ¶ 54, ECF No. 44; *see also Spota v. White*, 48 N.Y.S.3d 268, 2016 WL 6427362, at *2 (N.Y. Sup. Ct. 2016) ("*Spota II*"). He is currently incarcerated. White's conviction arose out of a scheme to defraud investors in a real-estate development. *See id.* at *4. The state argued that White held himself out as a financial advisor and solicited clients — including the Abneys — by representing "that he was going to invest their money in an income-producing, low-risk investment." *Id.* White used this money to purchase the "John Cline Reservoir" — a 400-acre parcel in North Carolina (the purported investment), through a limited liability company that paid real estate "brokerage commissions" to entities Plaintiff controlled. *Id.* After he refused a client's demand for the return of their investment, his

2

investors pursued criminal charges. *See Spota v. White* ("*Spota I*"), 997 N.Y.S. 2d 101, 2014 WL 2931068, at *2 (N.Y. Sup. Ct. 2014). The case was investigated and prosecuted by the Suffolk County District Attorney's Office. *People v. White*, Case No. I-2710-2012. A jury convicted White of grand larceny and fraud, and in 2015, the state court ordered Plaintiff to pay $2.975 million in restitution as part of his criminal sentence. *Spota II*, 2016 WL 6427362, at *2. The Abneys received $500,000 of that restitution (the amount of their original investment). *See* Exhibit I to Am. Compl., ECF No. 44-1 at 50 (Restitution Judgment Order CPL § 420.10).

The District Attorney then brought a civil forfeiture action against White and others to recover a total of $2.4 million in proceeds from the scheme. *Spota II*, 2016 WL 6427362, at *1. The District Attorney cited trial evidence that White took approximately $2.975 million from his victims and paid approximately $500,000 back to them for an "option" to repurchase their interests in the property. *Id.* at *4.

White later notified the Abneys that the North Carolina Superior Court had validated their property deed and that they therefore retained a "valid" ownership interest in the property. Am. Compl. ¶¶ 44-45; Exhibit L to Am. Compl., ECF No. 44-1 at 72. White contends that the court's finding proves he is "actually innocent," because the basis for his grand larceny

3

conviction was the invalidity of the deeds he sold to investors. *Id*. He requested that the Abneys sign and file a Satisfaction of Judgment with the Clerk of Court in Suffolk County, and notify the District Attorney of his actual innocence. *Id.* ¶ 45. The Abneys did not take these actions. *Id.* ¶ 46.

Plaintiff subsequently brought this action against the Abneys and others who assisted the District Attorney's Office in the criminal investigation and/or testified before the grand jury, trial court, and civil forfeiture hearings. He brings claims for fraudulent misrepresentation, fraudulent inducement, tortious interference with business relations, tortious interference with contracts, and unjust enrichment. White alleges that the Abneys, in making at least one criminal complaint to the District Attorney's Office, improperly "engaged" District Attorney Spota to "represent them" in recovering $500,000 that they used to purchase the property. *Id*. ¶ 35. He also contends that the Defendants misrepresented material facts to obtain his "unjust criminal conviction . . . and incarceration," including by giving false testimony. *Id*. ¶¶ 193-95.

Specifically, Plaintiff alleges the Abneys knowingly made false statements to the Suffolk County District Attorney's Office in September 2012, *e.g.*, *id.* ¶¶ 73, 115; before the grand jury in October 2012, *e.g.*, *id.* ¶¶ 74, 116; to the jury in his

4

criminal trial in October 2014, *e.g.*, *id.* ¶¶ 75, 117; and to the District Attorney's Office in connection with the civil forfeiture action in October 2016.  *E.g.*, *id.* ¶¶ 76, 118.  The allegedly false statements include the following:  that the Abneys falsely claimed that they did not sign a Purchase Agreement for an ownership interest in the property in North Carolina known as the John Cline Reservoir; that they did not sign, in connection with their purchase of the ownership interest, a Power of Attorney, a Dual Representation Agreement, a Tenant-in-Common Agreement, and numerous documents with "First National Qualified intermediary"; that they did not authorize an attorney to represent them in purchasing the property; that they did not authorize the attorney to create John Cline Reservoir I LLC on their behalf to purchase the property; and that they did not include the property on their federal and state tax returns. *See id.* ¶¶ 59-104.

Plaintiff alleges that the Abneys made these false statements for the purpose of misleading the District Attorney's Office into bringing criminal and civil actions, and the jury and state court into reaching adverse decisions, *id.* ¶¶ 193-95; and that the Abneys knew that their actions would prevent Plaintiff from continuing to develop the property and interfere with his contracts with third parties, including other investors.  *Id.* ¶¶ 274-77.

5

Finally, Plaintiff alleges that, as a result of the Abneys' false statements, the Abneys were unjustly enriched in the amount of $46,667 that he paid them for the right to repurchase their interest in the property; $1.1 million that he invested in developing the property; and an additional $30,000 of Plaintiff's assets that were "unjustly seized" based upon their false statements. *See id.* ¶¶ 288-89. Plaintiff argues that it is "against good conscience" to permit the Abneys to retain these amounts, and to retain a valid ownership interest in the property. *Id.* ¶¶ 291-92.

## II. Legal Standard

28 U.S.C. § 1915(e)(2)(B) requires the court to dismiss a *pro se* action that "is frivolous or malicious, or fails to state a claim on which relief may be granted." Although the Abneys have not appeared or moved to dismiss the action, the Court can dismiss a complaint pursuant to Section 1915 "at any time." 28 U.S.C. § 1915(e)(2)(B); *see also Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (a court "has the power to dismiss a complaint *sua sponte* for failure to state a claim on which relief can be granted").

At the same time, the Court is obligated to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470

6

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases "has its limits"; to state a claim, *pro se* pleadings "still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief." *Amison v. Fox News Channel*, No. 20-CV-4924, 2020 WL 4506023, at *1 (S.D.N.Y. Aug. 4, 2020). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

If a *pro se* inmate's complaint is dismissed under Section 1915, the Court should accord the plaintiff an opportunity to amend the complaint "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam).

### III. Discussion

The Plaintiff's claims against the Abneys are virtually identical to allegations he leveled against Sandra

7

Schmidt in this case. Schmidt moved (through counsel) for dismissal, and the Court dismissed the claims against her in an order dated September 30, 2020. ECF No. 54. Plaintiff's claims against the Abneys suffer from the same defects, and for the reasons set forth below, all claims against the Abneys are similarly dismissed. *See Town of Mamakating, N.Y. v. Lamm*, No. 15-CV-2865, 2015 WL 5311265, at *10 (S.D.N.Y. Sept. 11, 2015) (dismissing claims against a defendant that had not yet appeared where the claims were the same as, and "suffer[ed] the same defects" as, those against the appearing defendants), *aff'd* 651 F. App'x 51 (2d Cir. 2016).

**A.   Statements Made in Connection with Judicial Proceedings**

Plaintiff's claims are based entirely on statements the Abneys allegedly made to the Suffolk County District Attorney's Office in the course of its investigation, as well as their testimony in criminal and civil proceedings. These statements cannot be the basis for the instant claims because the Abneys are protected by the absolute immunity accorded to witnesses in criminal cases.

The Supreme Court has made clear that witness testimony at trial is entitled to absolute immunity, given the harm to the judicial process that would ensue if an aggrieved defendant could sue a testifying witness. *See Briscoe v. LaHue*, 460 U.S. 325, 335 (1983) (discussing the common-law rule of

absolute immunity arising out of a witness's testimony at trial); *Butz v. Economou*, 438 U.S. 478, 512 (1978) (discussing the necessity of absolute immunity to ensure that witnesses can perform their function without harassment or intimidation). The risk of a retaliatory lawsuit would, for obvious reasons, disrupt the judicial process by diminishing prospective witnesses' willingness to come forward and give honest testimony. *See Briscoe*, 460 U.S. at 332-33; *see also White v. Frank*, 680 F. Supp. 629, 634 (S.D.N.Y. 1988) (describing the "almost inevitable retaliatory suits that would follow every adverse determination at trial, without the deterrent of absolute witness immunity"). Absolute really means absolute: witnesses are afforded these protections even if they "knew the statements were false and made them with malice." *Briscoe*, 460 U.S. at 330; *Burns v. Reed*, 500 U.S. 478, 489 (1991). *Briscoe* immunity protects state-court witnesses from retaliatory suits in federal court, as well as witnesses who testified in federal proceedings. *E.g.*, *Matthews v. City of New York*, 889 F. Supp. 2d 418, 439, 447 (E.D.N.Y. 2012).

The doctrine of absolute immunity for trial witnesses has developed since *Briscoe* to protect witness statements made in other contexts as well. In *Rehberg v. Paulk*, 566 U.S. 356 (2012), the Supreme Court held that grand jury witnesses enjoy the same immunity as trial witnesses, and that this immunity

9

extends to claims against a witness "concerning the initiation or maintenance of a prosecution." *Id.* at 369. In other words, the immunity extends not only to witnesses' grand jury testimony but also to their preparation for such testimony, including when "'the witness relates the substance of his intended testimony' to the prosecutor." *Coggins v. Buonora*, 776 F.3d 108, 112 (2d Cir. 2015) (quoting *Rehberg*, 556 U.S. at 370). An allegedly false statement cannot be the subject of a collateral lawsuit simply because it was made in preparation for judicial proceedings, as well as at trial: "Were it otherwise, 'a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves.'" *Rehberg*, 556 U.S. at 369 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 283 (1993) (Kennedy, J., concurring in part and dissenting in part)).

There is a carve-out to this rule, but it does not apply here. Courts have allowed suits against law enforcement officers who "set the wheels of government in motion by instigating a legal action." *Sankar v. City of New York*, No. 07-CV-4726, 2012 WL 2923236, at *3 (E.D.N.Y. July 18, 2012) (quoting *Rehberg*, 566 U.S. at 371). This exception may apply, for example, to an officer who is alleged to have falsified an

affidavit or fabricated evidence.[2] And the exception extends to a lay witness who "played an 'active role in the prosecution, such as [by] giving advice and encouragement or importuning the authorities to act.'" *Rothstein v. Carriere*, 373 F.3d 275, 293-94 (2d Cir. 2004) (quoting *DeFilippo v. County of Nassau*, 183 A.D.2d 695, 698 (2d Dep't 1992)). However, simply "reporting a crime to law enforcement and giving testimony does not constitute the 'initiation' of a criminal prosecution. More is required." *Rothstein*, 373 F.3d at 294 (internal citation omitted). "The defendant must have affirmatively induced the officer to act, such as . . . [by] showing active, officious and undue zeal, to the point where the officer is not acting of his own volition." *Shah v. Lumiere*, No. 13-CV-2975, 2013 WL 6283585, at *3 (S.D.N.Y. Dec. 3, 2013) (quoting *Lupski v. Cnty. of Nassau*, 32 A.D.3d 997, 998 (2d Dep't 2006)); *see also Present*

---

[2] Even in the example of a law enforcement officer who falsely builds up the case, the rationale for allowing claims for conduct outside of the judicial proceedings is not a limitation on the immunity for witness testimony, but rather a recognition that some conduct "exists independently" from witness testimony when the witness is also actively involved in an investigation. *Coggins*, 776 F.3d at 113. In *Coggins*, the Second Circuit considered as a matter of first impression whether a law enforcement officer is entitled to absolute immunity as a grand jury witness pursuant to *Rehberg* when a plaintiff alleges that the officer withheld and falsified evidence in addition to committing perjury before the grand jury. *Id.* at 112. The court found that the complaint plausibly alleged misconduct by the defendant officer without reference to his perjurious grand jury testimony and could be subject to suit for that misconduct. *Id.* at 113. Still, the court noted that if discovery were to establish that any of the alleged conduct constituted "'preparatory activity' conducted in advance of his grand jury testimony," then he would be entitled to absolute immunity for that limited conduct under *Rehberg*. *Id.* at 113 n.7.

11

*v. Avon Prods.*, Inc., 253 A.D.2d 183, 189 (1st Dep't 1999) ("One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding.").

The Second Circuit has held that providing false information to the police may so directly affect an arrest determination as to constitute the "commencement" of a prosecution. *Stampf v. Long Island Railroad Co.*, 761 F.3d 192, 199-201 (2d Cir. 2014). But even providing false information does not, *in itself*, constitute initiation of a criminal prosecution where other complicating factors are present. *Rothstein*, 373 F.3d at 294 ("[T]he mere fact that a witness provided false information to the government does not warrant a conclusion that the witness initiated the prosecution where the rest of the evidence suggests otherwise."); *Hanly v. Powell Goldstein, L.L.P.*, 290 F. App'x 435, 439 (2d Cir. 2008) (same). White's complaint does not allege facts sufficient to invoke the carve-out to witness immunity. White alleges that the Abneys "engaged" District Attorney Spota to "represent them" in recovering $500,000, Am. Compl. ¶ 35, but the complaint sets forth no accompanying factual content to suggest that Spota acted other than as the prosecuting attorney. The Abneys are not alleged to have taken an active role in the investigation, prosecution, or civil forfeiture, other than as complainants and

12

witnesses. White alleges that the Abneys made false statements to the District Attorney's Office, but this alone is not enough, as noted in *Rothstein, supra*. White does not claim that they "importuned" the authorities to act or otherwise exerted undue influence in the process. In fact, the Amended Complaint does not suggest that the Abneys had any involvement in the cases beyond their role as witnesses.

Moreover, unlike in *Stampf*, *supra*, where the defendant single-handedly "flagged down" the police, "made them aware of the case," and "asked them to arrest" the plaintiff, 761 F.3d at 198 (cleaned up), there are significant intervening factors present here between the time of the Abneys' complaint and the initiation of White's prosecution. The Suffolk County District Attorney's office conducted a grand jury investigation into the complex transactions that White managed, and other witnesses — not just the Abneys — testified before the grand jury and at trial. Given these intervening factors, White's allegations against the Abneys do not reflect the kind of "undue zeal" that would support an inference that the district attorney was no longer "acting of his own volition." *Mesiti v. Wegman*, 307 A.D.2d 339, 340 (2003); *see also Fleurimond v. Holder*, 403 F. Supp. 3d 95, 112 (E.D.N.Y. 2019) ("A prosecutor is presumed to exercise independent judgment in deciding whether to initiate

13

and continue a criminal proceeding." (internal quotation marks omitted)).[3]

Accordingly, statements that the Abneys made in connection with the proceedings against Plaintiff — including those they made to the District Attorney's Office in preparation for those proceedings — are protected by the immunity afforded witnesses under *Briscoe* and *Rehberg*.  Thus, all of Plaintiff's claims against the Abneys must be dismissed.[4]  The Court also finds that leave to replead would be futile.

### III. Conclusion

This action, filed *in forma pauperis*, is dismissed with prejudice for failure to state a claim upon which relief can be granted against the Abneys.

---

[3] A second, and perhaps even more obvious, distinction between this case and *Stampf* is that the Abneys testified before the grand jury and at trial, and therefore can invoke the absolute immunity rules of *Briscoe* and *Rehberg*, whereas the complainant/defendant in *Stampf* never testified at all.  See *Stampf*, 761 F.3d at 197 ("No criminal complaint was ever filed against Stampf. . . . [T]he New York County District Attorney's Office issued a declination of prosecution . . . .").

[4] White's allegations against the Abneys also suffer from most, if not all, of the Rule 12(b)(6) problems that plagued White's complaint against Schmidt.  See Order dated September 30, 2020, ECF No. 54.  But I need not reach these issues because of the clear dictates of the doctrine of absolute witness immunity.

14

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

       /s Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    March 29, 2021
         Brooklyn, New York